UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABELARDO H., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No.: 3:19-cv-00230-JM (RNB) <br><br> **REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> **(ECF Nos. 14, 17)** |

This Report and Recommendation is submitted to the Honorable Jeffrey T. Miller, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

On February 1, 2019, plaintiff filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that

---

[1] Andrew Saul is hereby substituted as the defendant in this case per Fed. R. Civ. P. 25(d).

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

## PROCEDURAL BACKGROUND

On January 29, 2015, plaintiff protectively filed an application for SSI under Title XVI of the Social Security Act, alleging disability commencing November 29, 2014. (Certified Administrative Record ["AR"] 276-84; *see also* AR 147.) The application was denied initially and upon reconsideration. (AR 158-62, 168-72.) Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ"). (AR 174-76.) Hearings were held before the same ALJ on March 14, 2017, August 21, 2017, and January 2, 2018. (AR 31-57, 58-112, 113-40.) Plaintiff was represented by counsel at all three hearings, and testimony was taken from him, two medical experts, and three vocational experts. (*See id.*) The ALJ issued a decision on February 22, 2018, finding that plaintiff was not disabled for purposes of his benefits application. (AR 15-24.) Thereafter, plaintiff requested a review of the decision by the Appeals Council. (AR 275.) The ALJ's decision became the final decision of the Commissioner on November 28, 2018, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 29, 2015, the application date.[2] (AR 17.)

---

[2] SSI is not payable prior to the month following the month in which the application is filed. *See* 20 C.F.R. § 416.335.

At step two, the ALJ found that plaintiff had the following severe impairments: diverticulitis and related gastrointestinal impairments; degenerative disc disease; morbid obesity; and osteoarthritis of the hips and knees. (AR 17.)[3]

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 19.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in the Commissioner's regulations and specifically:

> "the claimant can stand and/or walk for one to two hours in a workday; the claimant can occasionally climb ramps and stairs; the claimant can occasionally balance, stoop, kneel, crouch and crawl; the claimant cannot climb ladders, ropes or scaffolds; the claimant must avoid all exposure to hazards, such as moving machinery and unprotected heights; the claimant cannot drive; the claimant is limited to understanding, remembering and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours; the claimant can have no interaction with the general public and the claimant can have occasional work related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand off of product." (AR 19.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would not be able to perform the requirements of plaintiff's past relevant work. Accordingly, the ALJ found that plaintiff was unable to perform any of his past relevant work. (AR 22.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC could perform the requirements of representative occupations that existed in significant

---

[3] The ALJ further found that plaintiff's medically determinable physical impairments of hyperthyroidism, obstructive sleep apnea, and hearing impairment were nonsevere; and that his medically determinable mental impairments of depressive disorder and anxiety disorder, considered singly and in combination, likewise were nonsevere. (AR 18.) Plaintiff is not challenging these findings.

numbers in the national economy such as a document preparer and assembler, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, since January 29, 2015, the date his application was filed. (AR 23-24.)

**PLAINTIFF'S CLAIMS OF ERROR**

1. The ALJ erred by failing to find plaintiff meets or equals Listing 5.06(B) for inflammatory bowel disease due to his complicated diverticulitis.

2. The ALJ erred by failing to find plaintiff meets or equals Listing 1.04(A) for disorders of the spine.

3. The ALJ improperly discredited the opinions of plaintiff's treating physician, Dr. Egisto Salerno.[4]

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

---

[4] The Court notes that, in his decision, the ALJ referred to Dr. Salerno as "Dr. Salerdo." (*See* AR 21-22.)

4

# DISCUSSION

## I. Reversal is not warranted based on the ALJ's Listings determination.

### A. Law relating to Listings determinations

In 20 C.F.R. Part 404, Subpart P, Appendix 1, the Commissioner has set forth certain impairments that are presumed to be of sufficient severity to prevent the performance of work. *See* 20 C.F.R. § 416.925(a). At step three of the Commissioner's sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant has an impairment that meets or equals a listed impairment, disability is presumed and benefits are awarded. *See id.*; *see also* 20 C.F.R. § 416.920(d).

The mere diagnosis of a listed condition does not establish that a claimant "meets" a listed impairment. *See* 20 C.F.R. § 416.925(d); *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 416.925(d). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531; *see also* 20 C.F.R. § 416.926(a).

The claimant has the burden of proving disability based on the Listing of Impairments. *See Burch v. Barnhart*, 400 F.3d 676, 83 (9th Cir. 2005); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).

B. The ALJ's Listings determination

In the part of his decision setting forth his step three determination, the ALJ stated that he had considered plaintiff's impairments under Listings 1.04 and 5.06. (AR 19.) The ALJ further stated:

> "The claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of any medical listing. No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairments." (*Id.*)

C. Analysis

*(1) Listing 1.04(A)*

Plaintiff claims that the ALJ erred by failing to find that plaintiff met or equaled Listing 1.04(A) for disorders of the spine. (*See* ECF No. 14 at 16-18.)

Listing 1.04 requires a finding of disability for a claimant who: (1) has a disorder of the spine, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture," (2) that results in "compromise of a nerve root . . . or the spinal cord," and (3) which is accompanied by the additional requirements set forth under subsections 1.04(A), 1.04(B), or 1.04(C). *See* 20 C.F.R. 404, subpart P, Appendix 1, § 1.04.

Subsection 1.04(A), the subsection at issue here, requires:

"Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *Id.* § 1.04(A).

Thus, where as here the claimant has been diagnosed as suffering from a specified spinal disorder impairment that involves the lower back, the following criteria need to be satisfied in order to meet Listing 1.04(A): (1) evidence of nerve root compression; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness

or muscle weakness) accompanied by (4) sensory or reflex loss; and (5) a positive straight-leg raising test (sitting and supine). Furthermore, since Listing 1.04(A) does not specify a shorter durational period, the claimant must establish that the impairment meeting the Listing has lasted or can be expected to last for a continuous period of at least 12 months. *See* 20 C.F.R. § 416.925(c)(4).

Here, as the ALJ noted twice in his decision, the medical evidence of record did not contain evidence establishing nerve root compromise or compression. (*See* AR 20, 21.) Indeed, at the January 2, 2018 administrative hearing, the medical expert (Dr. Zarrius Ghazi) testified to that effect and plaintiff's attorney conceded that the record contained no MRI of the lumbar spine. (*See* AR 43.)[5] The lack of medical evidence establishing nerve root compression in itself is dispositive of plaintiff's claim that the ALJ erred by failing to find that plaintiff met or equaled Listing 1.04(A).

Further, as the Commissioner points out, the medical evidence of record fails to establish the motor loss and muscle weakness necessary to satisfy Listing 1.04(A). While plaintiff has cited a single treatment note made on November 19, 2015 that states "weakness notable" (*see* ECF No. 14 at 9, citing AR 1123), plaintiff's treating physicians found on examination on numerous other occasions that plaintiff did not suffer from motor loss or muscle weakness, but rather had full strength in all muscle groups. (*See, e.g.,* AR 553 ("Strength (5/5) in all muscle groups"), 624 (same), 625 ("There is no evidence of . . . atrophy, muscle weakness"), 1133 ("No motor weakness notable"), 1152 (same), 1170 (same), 1176 (same), 1188 (same), 1196 (same), 1204 (same), 1211 (same), 1373 (same), 1425 (same), 1458 (same), 1468 (same), 1492 (same), 1500 (same), 1512 (same), 1523 (same), 1534 (same), 1551 (same), 1565 (same), 1600 (same), 1636 (same), 1651 (same).)

---

[5] Although Dr. Leonard Rubin, the medical expert at the August 21, 2017 administrative hearing, acknowledged in response to questioning by plaintiff's counsel that plaintiff's positive straight-let raising tests were "consistent" with nerve root impingement (*see* AR 85), neither plaintiff's counsel not Dr. Rubin cited any actual findings in the medical record of nerve root compression.

1  Plaintiff's failure to establish the requisite motor loss and muscle weakness for a
2  continuous 12-month period also is dispositive of his claim that the ALJ erred by failing to
3  find that plaintiff met or equaled Listing 1.04(A).

In addition, as the Commissioner also points out, plaintiff does not even assert that he experienced the requisite sensory or reflex loss. Indeed, the medical evidence of record is to the contrary. (*See* AR 553 ("Reflexes are equal and symmetric bilaterally in the upper and lower extremities"), 625 ("Reflexes are equal and symmetric bilaterally in the upper and lower extremities"), 875 ("He displays normal reflexes"), 1010 ("Motor and sensory function grossly intact"), 1052 ("reflexes are normal"), 1238 ("reflexes are normal"), 1620 ("reflexes were intact").) Plaintiff's failure to establish the requite sensory or reflex loss for a continuous 12-month period also is dispositive of his claim that the ALJ erred by failing to find that plaintiff met or equaled Listing 1.04(A). *See Cattano v. Berryhill*, 686 F. App'x 408, 410 (9th Cir. 2017) (holding that the claimant did not meet all of the requirements for Listing 1.04(A) because he was unable to point to evidence that he had suffered sensory or reflex loss).

Finally, as the Commissioner also points out, while plaintiff has cited evidence in the medical record of positive straight leg raising (*see* ECF No. 14 at 9, citing AR 1621-24), that evidence does not reflect the performance of testing in both the seated and supine positions, as Listing 1.04(A) requires where, as here, the lower back is involved. For this reason as well, the Court rejects plaintiff's claim that the ALJ erred by failing to find that plaintiff met or equaled Listing 1.04(A). *See, e.g., Kallenbach v. Berryhill*, 766 F. App'x 518, 520 (9th Cir. 2019) (holding that the claimant did not satisfy Listing 1.04(A)'s requirement of "positive straight-leg raising test results, both sitting and supine," because the "examination results state [claimant] had a positive left straight-leg raise but d[id] not specify if the testing conducted included sitting, supine, or both types of straight-leg testing"); *Yanchar v. Berryhill*, 720 F. App'x 367, 370 (9th Cir. 2017) (holding that the claimant did not meet Listing 1.04 because "the positive straight-leg raising tests in the record do not specify whether she tested positive both sitting and supine"); *Cattano*, 686

F. App'x at 410 (holding that the claimant did not meet all of the requirements for Listing 1.04(A) because he was unable to point to evidence of positive straight-leg raising tests in both the sitting and supine positions).

The Court also notes that plaintiff's Reply and Response to the Commissioner's Opposition/Cross-Motion is nonresponsive to the points raised by the Commissioner. Instead, plaintiff purports to make a new argument--i.e., that the ALJ committed reversible error in failing to address Dr. Rubin's opinion that plaintiff met Listing 1.04. (*See* ECF No. 18 at 4-5.)

At August 21, 2017 administrative hearing, Dr. Rubin did opine that plaintiff's degenerative disc disease met Listing 1.04 as of December 2015. However, Dr. Rubin was unable to render an opinion with respect to the duration of time for which plaintiff continued to meet the Listing. (*See* AR 90-96.) In the Court's view, Dr. Rubin's opinion consequently was not probative of whether plaintiff had met his burden of establishing disability under Listing 1.04(A). It follows that the ALJ did not err in failing to address this opinion of Dr. Rubin. *See Mitchell v. Colvin*, 2015 WL 1487022, at *3-*4 (C.D. Cal. Mar. 31, 2015) (ALJ did not err in failing to address treating physician's opinion that did not demonstrate the claimant satisfied the durational requirement of the Listing in question); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ need only discuss evidence that is significant and probative).

For all of the foregoing reasons, the Court finds that reversal is not warranted based on the ALJ's failure to find that plaintiff's degenerative disc disease met or equaled Listing 1.04(A).

*(2) Listing 5.06(B)*

Plaintiff also claims that the ALJ erred by failing to find plaintiff met or equaled Listing 5.06(B) for inflammatory bowel disease due to his complicated diverticulitis. (*See* ECF No. 14 at 13-16.)

9

In response to the ALJ's questioning at the August 21, 2017 administrative hearing, Dr. Rubin testified that, with respect to plaintiff's perforated diverticulitis, the closest and most comparable listed impairment was Listing 5.06. (AR 70-71.) In response to further questioning by the ALJ, Dr. Rubin opined that plaintiff's condition equaled this listing from December 15, 2014 until November 27, 2015. (AR 72.)

In his decision, the ALJ noted that Dr. Rubin had testified that plaintiff met the Listing from December 2014 through November 2015, which was not 12 months. (AR 21.) Thus, it appears from the decision, as well as from the ALJ's questioning of Dr. Rubin, that the basis for the ALJ's determination that plaintiff's perforated diverticulitis did not equal Listing 5.06 was the ALJ's belief that plaintiff needed to meet the requirements of the Listing for 12 months. This is the gravamen of the Commissioner's argument. (*See* ECF No. 17-1 at 4-6.)

To be sure, the general durational requirement for disabling impairments under the Commissioner's regulations is "a continuous period of not less than 12 months." *See* 20 C.F.R. § 416.905. However, as plaintiff points out, 20 C.F.R. § 416.926(c)(4) also explicitly provides:

> "Most of the listed impairments are permanent or expected to result in death. For some listings, we state a specific period of time for which your impairment(s) will meet the listing. For all others, the evidence must show that your impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months."

Thus, the 12-month durational requirement does not apply to all the Listings. Plaintiff contends that Listing 5.06(B) is one for which the durational requirement is shorter than 12 months. Specifically, plaintiff contends that the Listing "sets forth its own time parameters in terms of a six-month period." (*See* ECF No. 14 at 15.) The Court concurs. Listing 5.06(B) for inflammatory bowel disease requires a claimant to meet "[t]wo of the following despite continuing treatment as prescribed **and occurring within the same consecutive 6-month period**:

> 1. Anemia with hemoglobin of less than 10.0 g/dl, present on at least two evaluations at least 60 days apart; or
> 2. Serum albumin of 3.0 g/dl or less, present on at least two evaluations at least 60 days apart; or
> 3. Clinically documented tender abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> 4. Perineal disease with draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms or BMI, present on at least two evaluations at least 60 days apart; or
> 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.06(B) (emphasis added).

The Court notes that, in his Opposition/Cross-Motion, the only argument being made by the Commissioner in support of the ALJ's Listing determination with respect to Listing 5.06(B) is that plaintiff did not meet the 12-month durational requirement. The Commissioner has failed to address plaintiff's contention regarding the shorter durational requirement for Listing 5.06(B). (*See* ECF No. 17 at 4-6.) However, even assuming the ALJ committed error in his determination with respect to Listing 5.06(B), that is not dispositive of plaintiff's claim because the question remains whether the ALJ's error was harmless. The answer to that question turns on whether plaintiff has met his burden of demonstrating that he met all of Listing 5.06(B)'s criteria in the same consecutive 6-month period.[6] *See Kallenbach*, 766 F. Appx at 520 (holding that any error the ALJ committed in finding the claimant's impairments did not meet a particular Listing was harmless

---

[6] The Court does not find Dr. Rubin's testimony sufficient to satisfy plaintiff's burden because medical equivalence must be based on medical findings. *See* 20 C.F.R. § 416.926(b)(2). While Dr. Rubin opined that plaintiff's perforated diverticulitis equaled Listing 5.06(b), he did not provide any explanation of the basis for his opinion or identify which two of the specified criteria were evidenced by medical findings. (*See* AR 66-72.)

11

because the claimant had not demonstrated he had met all of the Listing's remaining criteria).

Plaintiff maintains that the medical evidence satisfied no. 4 of the specified medical criteria of Listing 5.06(B): "Perineal disease with draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart." (See ECF No. 14 at 14.) However, plaintiff has failed to cite any medical records evidencing uncontrolled pain present on at least two evaluations at least 60 days apart within a consecutive 6-month period. Evidence that plaintiff was experiencing abdominal time at the time of his first admission to the hospital on November 30, 2014 (*see* AR 874) and that plaintiff was again experiencing abdominal pain at the time of his second admission on December 31, 2014 (*see* AR 497) is not sufficient because those two evaluations were not at least 60 days apart. There is no indication in plaintiff's medical records that, at time of his discharge from the hospital on January 7, 2015, plaintiff still was experiencing abdominal pain that could not be controlled by his prescribed narcotic medication. (*See* AR 501 ("No significant physical examination findings at the time of discharge.").) When plaintiff was seen for follow-up on January 21, 2015, the treatment notes state, "Denies pain." (*See* AR 538, 650, 1029.) When the first drain was removed on February 11, 2015, the treatment note states, "Denies fevers, increasing abdominal pain." (*See* AR 867.) There also is no indication in plaintiff's medical records that, as of March 6, 2015, when the second drain was removed, plaintiff was experiencing abdominal pain. (*See* AR 1031.) When plaintiff was seen for follow-up on March 18, 2015, the treatment note states: "Has been doing very well, eating normally, normal bowel movements, no abdominal pain." (*See* AR 1032.) Thus, contrary to plaintiff's characterization, plaintiff's medical records for the period from December 2014 to March 2015, when plaintiff was being treated with drains for his perforated diverticulitis, do not evidence "persistent pain throughout."

The other criterion of Listing 5.06(B) that plaintiff maintains he satisfied in the same consecutive 6-month period is no. 5: "Involuntary weight loss of at least 10 percent from

12

baseline, as computed in pounds, kilograms or BMI, present on at least two evaluations at least 60 days apart." (*See* ECF No. 14 at 14.) In support of his contention that he satisfied this element, plaintiff has cited only a notation in a treatment note dated October 8, 2015 under the heading "Overweight – ongoing," which describes plaintiff's weight fluctuation from when he was in prison, to after he was released from prison, to after his hospitalization, and to the present. (*See* ECF No. 14 at 15, citing AR 1050.) However, plaintiff has failed to cite medical records documenting involuntary weight loss of at least 10 percent "present on at least two evaluations at least 60 days apart."

Because plaintiff has done an inadequate job of demonstrating that the medical evidence of record in fact did satisfy two of the specified medical criteria of Listing 5.06(B) in the same consecutive 6-month period, the Court is compelled to find that any error by the ALJ in his determination with respect to Listing 5.06(B) was harmless. It follows that reversal is not warranted based on the ALJ's failure to find that plaintiff's degenerative disc disease met or equaled Listing 5.06(B).

## II. Reversal is not warranted based on the ALJ's alleged failure to properly consider Dr. Salerno's opinions.

Plaintiff's third claim is that the ALJ improperly discredited the opinions reflected in the July 31, 2017 "medical source statement" provided by Dr. Salerno, who plaintiff has characterized as his treating physician. (*See* ECF No. 14 at 18-20.)

In the July 31, 2017 medical source statement, Dr. Salerno listed as plaintiff's diagnoses degenerative joint disease in both knees and hips, lumbar spinal stenosis, morbid obesity, sleep apnea, and hypothyroidism. (AR 1581.) He indicated that the date of first contact with plaintiff was April 23, 2015, but he did not specify the frequency of treatment. (*Id.*) Dr. Salerno checked off boxes indicating that plaintiff's maximum capacity to lift and/or carry was less than 10 pounds both occasionally and frequently, and he wrote that plaintiff was "unable to lift." (*Id.*). Further, he checked off a box indicating that plaintiff's maximum capacity to stand and/or walk with normal breaks was less than 2 hours in an 8-

13

hour workday. (AR 1582). Dr. Salerno wrote that plaintiff was "unable to stand for more than 15 minutes," and used assistive devices (i.e., a cane, a walker, and bilateral knee braces) that were medically necessary and had been prescribed by Dr. Steven Li. (*Id*.). Dr. Salerno also checked off boxes indicating that (1) plaintiff's ability to sit with normal breaks was less than 6 hours in an 8-hour workday, (2) plaintiff needed to alternate standing and sitting, (3) plaintiff could never perform climbing, balancing, kneeling, crouching, or crawling, (4) plaintiff also had environmental restrictions, (4) plaintiff's physical impairments would cause absence from full-time work more than 3 times a month, and (5) plaintiff would be off task due to pain or other symptoms more than 20% of the work day. (*See* AR 1582-1584). Dr. Salerno opined that plaintiff's impairment had lasted or was expected to last at least 12 months, and his prognosis was that plaintiff "appears totally disabled at present time." (AR 1584.)

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. § 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where the treating physician's opinion is controverted,[7] it may be rejected only if the ALJ makes findings setting forth specific

---

[7] Here, Dr. Salerno's conclusion that plaintiff was unable to work was controverted by the opinions of the State Agency physicians (*see* AR 141-46, 148-54) and his underlying

14

and legitimate reasons that are based on the substantial evidence of record. *See Lester*, *supra*; *Baxter*, *supra*.

The Court notes that one of the reasons proffered by the ALJ for not crediting Dr. Salerno's conclusion that plaintiff was unable to work was that such an opinion had no probative value because it was an opinion reserved to the Commissioner. (*See* AR 21-22.) The Court is mindful of Ninth Circuit authority for the proposition that the fact a treating physician rendered an opinion on the ultimate issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons for rejecting it. *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work. . . . A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (finding that ALJ had failed to give sufficiently specific reasons for rejecting the conclusion of plaintiff's treating orthopedist that plaintiff was "permanently disabled from his medical condition as well as his orthopaedic problems").

Here, however, it does not appear to the Court that Dr. Salerno actually was one of plaintiff's treating physicians. Plaintiff did not identify Dr. Salerno as one of the health professionals who had treated him in any of plaintiff's disability reports. (*See* AR 317-24, 343-50, 355-64.) Moreover, none of plaintiff's medical records evidence that Dr. Salerno saw plaintiff on April 23, 2015, the supposed date of his first contact with plaintiff, or that Dr. Salerno ever treated or even examined plaintiff.

---

opinion regarding plaintiff's functional limitations was controverted in part by Dr. Rubin's opinion regarding plaintiff's functional limitations (*see* AR 86-89).

In any event, the Court concurs with the ALJ that Dr. Salerno did not provide objective clinical or diagnostic findings to support his assessment of plaintiff's underlying functional limitations. (*See* AR 22.) Instead, Dr. Salerno merely made conclusory assertions. For example, when asked what findings supported his assessment of plaintiff's maximum capacity to lift and/or carry, Dr. Salerno asserted "unable to lift." (*See* AR 1581.) And, when asked what medical findings supported his assessment of plaintiff's maximum capacity to stand and/or walk, Dr. Salerno asserted "unable to stand for more than 15 [minutes]." The ALJ was not obliged to accept medical opinions that were "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1044–45 (9th Cir. 2007) (citing *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002)); *see also, e.g., Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions"); *Young v. Heckler*, 803 F.2d 963, 967, 968 (9th Cir. 1986) (treating physician's most recent medical opinion that claimant was disabled was properly rejected as "brief and conclusionary in form with little in the way of clinical findings").

The Court therefore finds that, even if Dr. Salerno was one of plaintiff's treating physicians and even if the ALJ arguably did err in rejecting Dr. Salerno's conclusion that plaintiff was unable to work, the error was harmless because the ALJ did state a legally sufficient reason for not crediting Dr. Salerno's assessment of plaintiff's underlying functional limitations. *See Howell v. Comm'r Soc. Sec. Admin.*, 349 Fed. Appx. 181, 184 (9th Cir. 2009) (ALJ's erroneous rationale for rejecting treating physician's opinion was harmless because the ALJ otherwise provided legally sufficient reasons to reject opinion). Accordingly, the Court finds that reversal is not warranted based on the ALJ's alleged failure to properly consider Dr. Salerno's opinions.

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's cross-motion for summary

judgment be **GRANTED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: November 12, 2019

_____
ROBERT N. BLOCK
United States Magistrate Judge